**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **M.W.-1, M.W.-2, C.R., L.W., R.W., and H.W.**

**No. 19-0528** (Ohio County 18-CJA-44, 18-CJA-45, 18-CJA-46, 18-CJA-47, 18-CJA-48, and 19-CJA-10)


**MEMORANDUM DECISION**


Petitioner Father M.W.-3, by counsel Ann Marie Morelli, appeals the Circuit Court of Ohio County's April 26, 2019, dispositional order terminating his parental rights to M.W.-1, M.W.-2, L.W., R.W., and H.W.[1], and his custodial rights to C.R.[2] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on behalf of the children in support of the circuit court's order. Respondent Mother K.R. (mother of C.R., R.W., and H.W.), by counsel Richard W. Hollandsworth, filed a response in support of the circuit court's order. Respondent Mother B.B. (mother of M.W.-1 and M.W.-2), by counsel John M. Jurco, also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him an extension of his post-adjudicatory improvement period, refusing to allow him to voluntarily relinquish his parental rights, and involuntarily terminating his parental rights to the children without imposing a less-restrictive disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, we will refer to them as M.W.-1, M.W.-2, and M.W.-3, respectively, throughout this memorandum decision.

[2]Petitioner is not the biological father of C.R., but was named in the petition as C.R.'s "occasional custodian." C.R. is the biological child of Respondent Mother K.R., with whom petitioner resided prior to the onset of these proceedings.

a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner engaged in acts of domestic violence against Respondent Mother K.R. in the presence of the children and abused drugs, which negatively affected his ability to parent.[3] Specifically, the DHHR alleged that petitioner was arrested and charged with domestic battery after an altercation took place between him and Respondent Mother K.R. Subsequently, petitioner's child, M.W.-2, reported that he was injured during another incident of domestic violence between petitioner and Respondent Mother K.R. After the petition's filing, petitioner stipulated to the allegations contained in the petition and was adjudicated as an abusing parent. Thereafter, petitioner was granted a post-adjudicatory improvement period, which required that he remain drug free and participate in random drug screening, anger management classes, and supervised visitation with the children.

The circuit court held a hearing on the DHHR's motion to terminate petitioner's post-adjudicatory improvement period in January of 2019, where the DHHR produced evidence of petitioner's noncompliance with the terms and conditions of his improvement period. Specifically, between September of 2018 and December of 2018, petitioner had twelve positive drug screens for an array of illegal substances, which resulted in the termination of his supervised visits with his children. Additionally, at prior multidisciplinary team meetings, petitioner refused to acknowledge his drug abuse and claimed that his positive drug screens were due to his consumption of Sudafed. Petitioner also claimed that someone placed drugs in his coffee without his knowledge. However, at the hearing, petitioner acknowledged his substance abuse problem and testified that he intended to enter an inpatient drug rehabilitation treatment facility. The circuit court terminated petitioner's post-adjudicatory improvement period, but advised petitioner that his subsequent actions would be relevant to his final disposition.

In April of 2019, the circuit court held a dispositional hearing. The circuit court heard testimony from a Child Protective Services ("CPS") worker who testified that petitioner failed to participate in drug screens since the termination of his post-adjudicatory improvement period in January of 2019. The CPS worker further testified that, despite petitioner's assertion that he intended to enter a drug rehabilitation treatment facility, petitioner failed to do so. The CPS worker also testified that petitioner's failure to obtain a special medical card, which would have permitted him to be admitted into treatment, was due to petitioner's failure to provide the DHHR with a denial letter for a standard medical card, which petitioner was instructed to do. Finally, the CPS worker testified that petitioner failed to participate in any services designed to address his anger management issues. As such, the CPS worker recommended termination of petitioner's parental rights. At the conclusion of the CPS worker's testimony, petitioner informed the circuit court that he wished to voluntarily relinquish his parental rights to the children; however, the circuit court denied petitioner's motion and proceeded to take evidence regarding petitioner's disposition. Petitioner testified that he applied to an inpatient treatment facility but was not accepted because

---

[3]On appeal, petitioner failed to include the DHHR's petition in his appendix. However, the briefs filed by the parties, as well as the transcripts of the hearings below, contain sufficient details to elucidate the contents of the petition.

he did not have a medical card. However, petitioner testified he recently received a medical card and intended to enter drug rehabilitation. Petitioner admitted that he did not have stable housing and testified that while he initially stopped submitting to drug screens because he was depressed, he had resumed drug screening the previous week. Based on the testimony and evidence presented, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and terminated petitioner's parental rights to the children. It is from the April 26, 2019, dispositional order that petitioner appeals.[4]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying him an extension of his post-adjudicatory improvement period; however, the record is devoid of any evidence that petitioner moved for such an extension. Moreover, petitioner fails to cite to the record to demonstrate that he moved for an extension of his post-adjudicatory improvement period or that such motion was denied. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we find that petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in refusing to allow him to voluntarily relinquish his parental rights at the dispositional hearing. Specifically, petitioner asserts that the circuit court "failed to acknowledge that [he] had a right to relinquish [his parental rights] or provide a sound legal reason as to why he should be denied the right to do so." In support of this

---

[4]According to the DHHR, the permanency plan for M.W.-1 and M.W.-2 is to remain in the custody of their nonabusing mother. The permanency plan for C.R., R.W., and H.W. is to remain in the custody of Respondent Mother K.R., who successfully completed her preadjudicatory improvement period. L.W.'s mother's parental rights were also terminated below. L.W. is currently placed in the home of Respondent Mother K.R., with the permanency plan of adoption therein.

argument, petitioner cites to Syllabus Point 3 of *In re James G.*, 211 W. Va. 339, 566 S.E.2d 226 (2002), wherein this Court held that

> [i]n the context of an abuse and neglect proceeding, a court *may* accept a parent's voluntary relinquishment of parental rights without the consent of the West Virginia Department of Health and Human Resources, provided that the agreement meets the requirements of [West Virginia Code § 49-4-607], where applicable, and the relevant provisions of the Rules of Procedure for Abuse and Neglect Proceedings.

(Emphasis added). However, petitioner ignores Syllabus Point 4 of *James G.*, wherein we further held that

> [a] circuit court has discretion in an abuse and neglect proceeding to accept a proffered voluntary termination of parental rights, *or to reject it and proceed to a decision on involuntary termination.* Such discretion must be exercised after an independent review of all relevant factors, and the court is not obliged to adopt any position advocated by the Department of Health and Human Resources.

*Id.* at 341, 566 S.E.2d at 228 (emphasis added). Given that the circuit court had full discretion to reject petitioner's request to enter into a voluntary relinquishment of his parental rights, we find petitioner's argument that the circuit court failed to acknowledge his "right" to voluntarily relinquish his parental rights to be meritless. Furthermore, contrary to petitioner's assertion that the circuit court failed to state a proper basis for denying the relinquishment, a review of the record shows that the circuit court properly exercised its discretion in rejecting the same. Petitioner did not inform the circuit court that he wished to voluntarily relinquish his parental rights until after the DHHR's presentation of evidence, at which point petitioner's counsel indicated that she had not prepared any paperwork for the proposed relinquishment because petitioner initially requested to proceed with a contested dispositional hearing. In response, the circuit court asked for the parties' positions on the issue. The DHHR stated that while it recognized the court's discretion in considering petitioner's relinquishment, it preferred to move forward with the disposition rather than having to return at a later date for a relinquishment proceeding. Similarly, the guardian acknowledged the circuit court's discretion to consider the relinquishment, and expressed that it be made clear to the mothers that an accepted voluntary relinquishment would not permit them to allow petitioner contact with the children. After considering the positions of the parties, the circuit court found that if petitioner wished to enter into a voluntary relinquishment, he could have done so prior to the presentation of the DHHR's evidence, concluded that it was not "inclined to entertain a voluntary relinquishment," and proceeded with the dispositional hearing. Accordingly, we find no error in the circuit court's decision to reject petitioner's offer to voluntarily relinquish his parental rights.

Finally, petitioner argues that the circuit court erred in terminating his parental rights, rather than imposing a less-restrictive disposition. Specifically, petitioner asserts that a less-restrictive disposition would have been appropriate because it would have given him a chance to remedy his addiction issues. Additionally, petitioner asserts that the DHHR failed to provide evidence as to why termination of his parental rights was in the best interests of the children. We disagree.

4

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Here, petitioner failed to follow through with rehabilitative efforts designed to reduce or prevent the abuse and neglect of the children. Petitioner stipulated to abusing his children based upon his substance abuse and acts of domestic violence, yet failed to correct either of these issues despite being granted a post-adjudicatory improvement period. As stated in detail above, the CPS worker provided ample testimony of petitioner's overall lack of participation and compliance with the terms and conditions of his post-adjudicatory improvement period, which resulted in his improvement period being terminated. Moreover, despite petitioner's numerous assertions that he intended to enter an inpatient treatment center, petitioner failed to enter treatment. Although petitioner asserts that he was unable to enter treatment because he did not have a medical card, the testimony of the CPS worker established that the DHHR provided petitioner with specific instructions on how to obtain a medical card, but petitioner failed to take the necessary steps to do so. Additionally, the CPS worker's testimony established that petitioner failed to participate in any anger management services and continued to test positive for an array of illegal substances throughout the proceedings. After reviewing the testimony and evidence presented, the circuit court concluded that sufficient evidence existed to find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was in the children's best interests. Further, while petitioner argues that a less-restrictive alternative to termination was appropriate in this case, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court's findings are fully supported by the record, we find no error in the circuit court's termination of petitioner's parental rights without the use of a less-restrictive dispositional alternative. Accordingly, petitioner is entitled to no relief.

Finally, we note that the record is devoid of any information regarding the identity of C.R.'s father or the status of said father's parental rights to C.R. On appeal, the parties did not include the DHHR's petition in the appendix record. Accordingly, upon our review, the Court is unable to determine what steps, if any, the parties took to ensure that both of C.R.'s parents were involved in the proceedings. Due to the limited record, the Court cannot ensure that permanency for C.R. has been achieved by placement with the mother, given that C.R.'s father is not identified. Accordingly, we remand this matter for the limited purpose of determining what actions may be necessary to ensure the C.R.'s permanent placement with the mother is not jeopardized. If the child's father—be he known or unknown—was included in the DHHR's petition below, the circuit court on remand is directed to take the appropriate steps to proceed in light of his inclusion and any allegations of abuse and/or neglect alleged against that father, in accordance with the applicable rules and statutes governing child abuse and neglect proceedings. If the DHHR did not include C.R.'s father in its petition, the circuit court is hereby directed to require the DHHR to undertake an investigation into whether C.R.'s father has engaged in any conduct that would constitute abuse and/or neglect to that child and file any additional petitions that may be necessary in regard to C.R.'s father and in furtherance of obtaining permanency for C.R. in accordance with the child's best interests.

Affirmed and remanded for further proceedings.

**ISSUED**: February 7, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison